*166 OPINION OF THE COURT — by the
Hon. POWHATTAN ELLIS.
The complainant alleges in his bill — that some time in the year eighteen hundred and sixteen, he resided on a plantation on Pine Ridge, in the county of Adams — and Nathaniel Harrison, and Simeon Gibson, beingthen seized or pretended to be seized of a tract of land adjoining the complainant, under and by virtue of a donation from the Government of the United States to the representatives of Abner Pipes, and that said Harrison made repeated applications to him to purchase said tract, or part thereof, and for the purpose of alarming and barrassing the complainant, repeatedly represented to him, that a part of his plantation upon which several of his improvements were situated, as embraced within the limits of said donation, and often threatened to sell the premises to some other person, unless said complainant would immediately consent to purchase the same. It is further stated, that complainant being repeatedly harras-sed by continued applications from Harrison, and believing at the time his house lay within the limits of the donation from the United States to the legal representatives of Abner Pipes, and fearing if the land was sold to any other person, he would be turned out of his possession and improvements, at last consented to purchase a part of said tract of land from Harrison and Gibson, for which he agreed to give the sum of four hundred dollars —and accordingly, on the 7th of December, 1818, by indenture,Plarrison and Gibson conveyed to the complainant, one hundred and thirty acres, more or less, for and in consideration of the sum of four hundred dolars, the receipt of which is acknowledged. Complainant further states, before concluding the purchase aforesaid, he frequently went to the Register’s office, in Washington, to ascertain whether the land upon which he resided was vacant or not — and uniformly found the same represented on the office map as belonging to the representatives of Abner Pipes. The complainant further states, that after he had been in possession of the land purchased as aforesaid, he discovered the same was advertised for public sale, under the authorities of the United States, and being alarmed at his situation, he repaired to the Land Office a second time, and found that the donation of A. Pipes, under which Harrison and Gibson claimed, had been erroneously laid down in the Register’s office — and that the 130 acres purchased as aforesaid, was not included in the donation to Pipes; but, be *167 longed to the United States, and that the original survey of said donation had been found, by which the error was corrected. The complainant expressly charges in his bill, that Harrison and Gibson were well acquainted with the real location of A. Pipes’ donation, and knew at the time of the sale and conveyance aforesaid, that it did not extend to the plantation and improvements of Stowers. It is further stated — that in July, 1821, the land purchased by complainant, from Harrison and Gibson, was set up at public sale in the town of Washington, under the authority of the Government of the United States, and believing that no title vested under the conveyance from Harrison and Gibson to Stowers, he became the purchaser, for the sum of two hundred dollars, and shortly after the sale and purchase from the United States, notice was given to Harrison and Gibson and demand made of them, to refund the amount of the purchase money, or compensate the complainant by an allotment of land out of the donation they held of the representatives of Pipes. It was expressly understood by the parties, that the tract of land sold was a part of Pipes’ donation, when in fact it appears from the survey to lie much lower down. The bill concludes with a prayer for specific and general relief. ■
The answer of the defendant admits all the material allegations set forth in complainant’s bill — except as to the knowledge of defendant about the real situation ofthe donation. This case coming on to be heard before the Chancellor, on the second Monday in January, 1824, and the case having been argued by counsel, and mature deliberation being had thereon — It was decreed, that the contract between the parties be annulled, and the deed of conveyance be delivered up to be cancelled, and that defendants pay back the amount of purchase money, with interest, and six per cent damages, and costs of suit.
An appeal was taken from the decree of the Chancellor to this court-
From the bill, answer, and exhibits in this case, I cannot conceive how the Chancellor could have given a different decree, without doing manifest injustice to the complainant. “The court having equal jurisdiction to relieve in respect of plain mistake in contracts in writing, as against frauds in contracts.” Suppose an instrument of writing in the nature of a contract was executed, contrary to the intention of all parties, — would not this court upon a proper shewing afford relief, even in the ab- *168 ssnce of fraud? Most unquestionably — as in the case of a bargain and sale not recorded within the time limited'by law — equity will com! pel the vendor to make a good title, by executing another bargain and sale which may be recorded in due time. Mistakes in deeds are rectified by construction, in order to meet the equity and justice of the case, when the intention of the parties can be clearly ascertained — as when a man makes a feoffment to his relation and his heirs, and he neglects'to make livery of seizin; it is obvious, that he meant his relation should take it by a common conveyance, but he cannot do so for the want of that formality; therefore it shall operate as a covenant to stand seized — and the statute will execute the use, passing the estate to him for whose.benéfit it was intended. So in cases of inadequate consideration, which appears to be grossly unjust, the conscience of the court will become dissatisfied, and relief will be given as a necessary consequence. I wish it to be understood there are many exceptions to this rule — as post obits — sales of reversions — sales at' auction, — and also in marriage settlements, though they may be very unequal and in favour of the wife, the court will not give relief — because, the wife cannot be put in statu quo. These cases are cited to shew how far our courts in the exercise of “plenary powers” will go in relieving against great hardships, omissions, mistakes and accidents. If then, upon principle, we are waranted'in giving full force and effect to the intention of (he parties in the several instances alluded to; of how much more importance to the administration of justice, that we should protect those, who claim the interposition of the Chancellor upon the ground, that the consideration upon which the contract was executed has entirely failed, either from circumstances of fraud or from mutual error and mistake.
In relatian to the rights of the parties before us, we find all the material allegations qn complainant’s bill admitted, except one important fact— that of defendants knowing the land upon which Stowers resided was not within the limits of the donation from the United States to Abner Pipes’ representatives.
If the defendants knew how far the lines of the donation tract extended, and that they did not enclose the improvements of Stowers, they were guilty of a fraud — for it is expressly alleged in the bill, and admitted in the answer, that the land purported to have been conveyed, andj expressly *169 designated in the deed, lay within the donation of Pipes’ representatives, and was purchased by complainant, under a full persuasion of the existence of that fact. Dougherty, the Surveyor of the Public Lands of the United States, unhesitatingly states, that when he run out the lines of the donation tract, they were found to be below the southern boundary of Stowers’ premises. This fact is also supported by the evidence of Pennington Tucker, ■ — and is to be most strongly inferred from the circumstance, of Harrison and Gibson not proving the contrary before this cause was set down for final hearing. If the respondents were so fully persuaded, from the representations they made to Stowers, they were the legal owners of the land mentioned in the deed of conveyance, they could have proven the fact by an exhibition of their title — and their omitting to do this, when viewed in conection with the testimony of Dougherty, and Tucker, raises such, a violent presumption of fraud, that a court of equity will be compelled, under such circumstances to decree a rescission of the contract.
Admit that Harrison and Gibson did not commit a fraud upon the rights of complainant, still it presents a case of mutual error and mistake in reference to the situation of the land said to have been conveyed by the deed bearing date the 7th of December, ISIS. .Looking at the contract in this aspect, it presents a case of hardship limited in its operation by the amount of the purchase money paid to the defendants at the time of the execution of the contract. And can it be pretended,, (even in the absence of fraud) that one party shall be placed in a more favourable attitude than that of the other, in a case of mutual error and mistake — or would it he more consistent with those great and immutable principles of justice, which have invariably characterized the decisions of a. court of equity, to restore the parties to the same situation in which they were previous to the inception of the contract. In this matter, we cannot hesitate, as .there is no evidence to satisfy this court Stowers knew of the conflicting claims of any other individual, and under such circumstances, only purchased the right of Harrison and Gibson. — If this had been the ease, however.onerous .the contract, the complainant would have to lie down under his own folly and indiscretion.
Judgment of the superior court of chancery affirmed, &c.
Chief Justice Hampton concurred on the 14th of January, 1824.